We're happy to hear argument in our first case, the United States v. Shepperson. Mr. Sheppard. Good morning, your honors. May it please the court. My name is Ray Sheppard. I'm here on behalf of Mr. Shepperson. Please allow me to begin by saying Happy Halloween. I hope that everyone has a safe and but a safe Halloween. I cannot imagine anything more terrifying on this Halloween day than being forced to go to trial in a capital case with a lawyer you don't trust, who you believe has been ineffective, and who you think has lied to you. Everybody has taken death off the table in this case. That's true, your honor, but this court is held in United States v. Boone, 245 Fed Third, 352 Fourth Circuit, 2001, that even though no capital notice is filed under Section 3593, the statutory protections provided in Section 3005 of Title 18 still apply, because if you read the statute, it says whoever is indicted under a capital offense, and therefore the there is no removal of that protection if the government subsequently decides that they're not going to seek the death penalty. It can't reasonably be argued that life plus hundreds of years in prison is not still a significant sentence and still very scary for the defendant. So I think the government will agree that the protections of Section 3005 apply, notwithstanding the fact that they didn't actually seek the death penalty. Where the parties diverge in this case, your honor, is that the statute also says that the district court shall promptly assign two lawyers in such a case, quote, upon the defendant's request. And at least one of those lawyers, as we know, must be learned in capital cases. »» Will the defendant make a request in this case? »» Yes, your honor, he did. And what I would like to do is invite the court, and now I've cited these cases in my brief, but I'd like to invite the court to a couple of sentences in this court's decision in United States v. Williams. It's at 544 Fed Second, page 1219. And if I may, I'm just going to read a couple of sentences. They're in this court in analyzing Section 3005, stated, that there is no burden on the government to prove the existence of a knowing involuntary waiver of the right to two counsel under Section 3005. Rather, a waiver will be presumed unless the defendant can show that there has been a request for two counsel or an equivalent circumstance which would clearly demonstrate that the defendant required additional counsel. In a footnote to that sentence, this court stated, such a circumstance may exist, for example, where the defendant has expressed dissatisfaction with his attorney. And there in that footnote, the court cites its earlier decision in United States v. Blankenship. Specifically in Williams, this court noted that that circumstance was not present. In this case, that circumstance is clearly present. Here we have a defendant, my client, Mr. Sheperson, who prior to trial, months prior to trial, sent a letter to the district court in which he said, essentially, Judge, I'm not happy with my assigned appointed counsel. Please give me different counsel. The district court held a hearing and decided that that request should be denied. Subsequently, in February, still a month or several weeks before Mr. Sheperson's trial began, he wrote another letter to the trial judge. Again, saying to the trial court, essentially, Your Honor, I don't trust my lawyer. I don't like my lawyer. Please give me different counsel. That request was also denied. Then, on the first day of trial, on March 1, 2011, the defendant again raises with the district court the fact that he doesn't like his lawyer and he wants different counsel. In fact, in the ---- »» I thought the trial judge wrote a fairly detailed opinion about those items. »» The trial judge wrote a fairly detailed opinion about why he was denying Mr. Sheperson's request for new counsel. Putting that aside ---- »» Well, let me read you a couple of points from that. The trial judge says, despite the court's repeated attempts to obtain specific information from the defendant, Mr. Sheperson either declined to provide information or merely repeated the general complaints contained in his letter. Then, later on, it says the court understands the defendant is no longer requesting new counsel. The defendant's request is not supported by specific information. »» Well, Your Honor, what I can say is that the first day of trial, he did provide specific information. He said his trial counsel, he believed, had lied to him. He believed that the trial counsel was not advocating in his best interests. And he stated that he believed his trial counsel was ineffective. Now, I wasn't the trial counsel. And so, honestly, I'm at a little bit of a disadvantage because I wasn't physically there. But I can tell you that based on the record, that it's very, very clear that Mr. Sheperson objected on to his lawyer, didn't trust him. And I don't know whether that was the reason why the court got the impression at some point along the way when there were just letters that he wasn't really asking for new counsel. But clearly, by March, on the record transcribed, Mr. Sheperson gave very specific reasons why he did not want his current lawyer. He believed he had been lied to. He believed his trial counsel wasn't advocating in his best interests. And he believed that his trial counsel was ineffective. Going back to this Court's decision in Williams and Blankenship, where the Court stated that those circumstances are sufficient to constitute a request under 3005. »» You know, I hear what you're saying. And I think that that language is helpful to you and I credit you for finding it. But Boone is the first precedent on this. And the rule is that we follow the first precedent if there are two in conflict. And Boone said the defendant must request the appointment of a second lawyer. »» Well, Your Honor . . . »» So, you know . . . »» Well, Your Honor, that statement in Boone is really dicked up. Because in Boone . . . »» And the statement in the other case isn't dicked up? »» Well, in Boone . . . »» So we have ruling dicked up. »» Sure. But, well, you have to decide this issue. Because I don't think in Boone it was  »» Coming up on that, Boone, I think you'll acknowledge, is a minority opinion among the circuits. And in Boone, the Fourth Circuit strictly read the literal terms of the statute. »» Right. »» It's a death-eligible indictment, so he gets two lawyers whether the government seeks a death penalty or not. So . . .  »» »» So這個問題 the issue we're dealing with here was not actually presented in Boone . . . »» That really doesn't go to respond to statutory construction given Boone to create this minority ruling that's an outlier. »» Well, I think that fundamental fairness dictate that when you have a defendant who is clearly asking for different counsel courts have held, not just in this circuit, but in the Smith case, the D.C. circuit case, in which the appellate court has said, look, under those circumstances, at a minimum, the right to the two lawyers should not be lost because either trial counsel or the defendant isn't aware of the right. And at no point in this case did anybody say to Mr. Sheperson, by the way, there's a statute and all you have to do is use magical words to say you want two lawyers and all of your requests about asking for a different lawyer will be granted because then Congress said you have the statutory right to have two attorneys. That seems like trickery to me in a very serious case and doesn't protect fundamental fairness. I think that it's very difficult. It's one thing to say we're going to strictly construe the language, but I think that strictly construing the language means doing it in a manner consistent with due process and fairness. And in this case, clearly Mr. Sheperson wanted different counsel. There's no question he wanted a different lawyer. And under those circumstances, to say that it's beyond the pale of what Congress intended to advise the defendant that he's entitled to two lawyers, I think is just not the right decision. Let me move on to the second issue, which is also triggered by the fact of an indictment or the language in Section 3432 says one who is charged with a capital offense. That would be significant language, wouldn't it, because clearly Congress has chosen two very different terms of art for these two related statutes. Well, I think they're both used interchangeably by Congress, charged with and indicted with. I mean, you are charged by way of indictment. So I don't perceive . . . When you say charged in 3005, I thought we were to presume that Congress uses those terms and they use different terms, particularly with regard to statutes that are related to the same subject matter, that we are to presume that they intended different meanings. Well, they're not related to the same subject matter. They weren't passed at the same time or necessarily even by the same Congress. But I think that to say . . . I mean, I think the Court would be hard-pressed to come up with a meaning other than an indictment when the Congress says when you're charged with a capital offense. So yeah, Congress didn't use the identical language, indictment versus charged with, but if anything, it's broader because you can be charged by way of information, you can be charged in a number of manners other than by indictment. So if anything, 34 . . . Well, I think that maybe that's true, but that doesn't mean they're the same. That's right. In other words, in the earlier statute, it could have said and would be perhaps more supportive of the minority rule that we've come down with. It says charged rather than indicted. Okay. But, I mean, I don't think it's subject to real debate that my client was charged with a capital offense in this case when he was indicted. Didn't he have an obligation to object? Object to what, Your Honor? To not being given the names of the witnesses. Yes. And, in fact, his trial counsel did. In fact, the trial counsel filed a motion to dismiss several accounts of the indictment specifically on the grounds that . . . He timely did that? He did. But, and I don't mean to be critical of trial counsel, he's a friend of mine, but I don't think he specifically cited this statute. He complained that he didn't know who the witnesses were and that the government was withholding it under the order. And I thought that when along came the witnesses and there was no complaint. Oh, I don't know that that's . . . May I just read the record here? I think there was complaint prior to. Now, did he renew his complaints after the witness testified? I don't think he did. And, in fact, he did have three days before. So we're looking at plain error, it seems to me. Your Honor, he did not have three days with respect to the witness in this case, which is Mr. Perades. He didn't? Oh, absolutely not. Mr. Perades' identity as a witness and prior witness statements were disclosed hours, literally on the afternoon of the day before the morning in which the witness was called to testify and significantly after the government had already placed the medical examiner on the stand. He asked for a continuance? He did not ask for a continuance. And we can all Monday morning quarterback Mr. Bartos all day long, and I hate to do that as appellate counsel, but perhaps he should have asked for additional time. Perhaps he should have raised this particular statute. But I don't believe that the government provided a witness list on the first day of trial, three days before Perades was called to testify? He was on that list, wasn't he? I don't think that was three days. Yeah, it was. Well. Okay. But there was a violation of the statute, to be sure. The question is whether he suffered an error in his argument about it, and whether he's suffered, if it was an error, whether he's been prejudiced. And I also think it goes a little bit beyond the statute, because the United States in Revario back in 1957, and this Court in Blevins, 960 Fed Second 1252, 1992, essentially held that when you have a witness whose identity has been concealed for whatever reason, who was an active participant in the crime, the balance shifts in favor of disclosing the identity of that witness prior . . . But those witnesses never testified. It was hearsay evidence with respect to them. No, no, no, no. The star witness in this case, Your Honor, was Mr. Perades. In this case, but in the cases you relied on . . . Oh, right. I'm sorry. I misunderstood you. You're right. But the point I'm trying to make, and I'm about to run out of time, is simply that when you have a witness like Perades, who was the only witness who could place the defendant at the scene of the crime, and the only one who could place the defendant as the shooter who killed Mr. Montoya, if you look at those cases and the analysis in those cases, it weighs in favor of requiring disclosure prior to trial as a matter of fundamental fairness. Thank you. And I reserve the rest of my time. Thank you. Good morning, Your Honor. May it please the Court, my name is Sujit Raman. I'm the Appellate Chief for the District of Maryland, appearing on behalf of the United States. Your Honor, if I could, just very briefly begin with a very brief factual background, and then I'll get right to the legal issues in this case. As the Court is aware, this case arose out of a lengthy investigation into the Latin Kings, a violent criminal gang that terrorized communities in Maryland and across the United States over the course of a number of years. Nineteen defendants were charged in this case. Only one defendant, Mr. Shepherson, proceeded to trial. As the Court is aware, the original indictment in this case, which the grand jury returned in November of 2009, charged a single count of racketeering conspiracy in violation of Section 1962D, which carries a maximum penalty of 20 years. Now, nearly a year later, the grand jury returned a superseding indictment with eight additional charges. Many of those charges related to the defendant's brutal robbery and murder of John Montoya on the afternoon of April 25, 2008. There is no dispute that two of those additional charges, count six of the superseding indictment, which charged murder in aid of racketeering in violation of the Vicar Statute, and count nine, which charged murder as a result of using and carrying a firearm in violation of Section 924J, had as a maximum penalty the death penalty. It is equally undisputed that the defendant never faced the death penalty in this case because the Attorney General elected not to seek the death penalty before this case was even presented to the grand jury when it returned its superseding indictment in October of 2010. You aren't disputing that Boone is the law in this circuit, right or wrong? Your Honor, I am not disputing that. And indeed— Move right along. Well, I do want to touch on something, Judge Moss, that I think you touched on earlier, and the question being which decision controls when there is a circuit split. And Your Honor correctly, of course, pointed out that the earlier decision controls. I would say, and I think it's important to note this, there is a decision from 1969, the Hall decision, we cited in our briefs, which explicitly says that the procedural protections that normally apply to capital defendants do not apply when the defendant does not face the death penalty. So I think there is an arguable— You're right. I think there's an argument, but I guess the end note is that Boone is more specific. That's fair, Your Honor, certainly. And I would say, Your Honor, under Boone, as the Court pointed out earlier, footnote seven points out that you have to actually request the second attorney. So even under the Boone decision, a defendant has to affirmatively request a second lawyer to enjoy the protections afforded by section 3005. That is very different from this case, where Mr. Shepperson never raised a claim under section 3005, and thus never actually triggered the statutory protections. And that really gets to the very key issue in this case, is whether or not a defendant who is never eligible for the death penalty, because the government never filed its notice in this case, is afforded all of the robust, expensive procedural protections that a defendant enjoys, a capital defendant enjoys, under section 3005, the notice provisions under section 3432. The government submission is that if the defendant doesn't affirmatively request his right, he is not entitled to the protections under 3005, and if he doesn't timely object under section 3432, then he's not entitled to, at least on plain error review, merit a reversal of his conviction. I would like to point out, Your Honors, that there is some disparity between these two provisions. The court, I think very properly, has pointed out that, well, we have to construe these provisions in harmony, and that's certainly the case. But there is a disjunction, even within this court's authority, with relation to these two provisions. Under Boone, of course, it is reversible error for a district court, for a defendant not to be given a second lawyer if he so requests it. But under this court's decision in Fulks, which is a 3432 case, the error, it is not a reversible error. The court will essentially look at whether or not the district court abused its discretion, and it will engage in a harmless error inquiry. So I guess the point I'm trying to make is that even within these procedural protection statutes, which are similar — I don't know that I followed that. Were you distinguishing between the two arguments that are made, or are you making an argument with respect to just the first argument? Well, I'm trying to make a distinction between the two arguments, Your Honor. Partly because — You don't think that — you think that the second is subject to harmless error review, the second argument that's made here. That's correct, Your Honor. But if there had been a violation of the first, it wouldn't be subject to — That's right, Your Honor. — under Boone. That's right, Your Honor. That's exactly right. And as the court observed, Your Honor, as you pointed out earlier, the presumption was that Section 3432 applies in this case, that Mr. Sheperson had rights under 3432. I suppose what I'm trying to suggest to the court is that he really didn't because, again, he never faced the death penalty in this case. And because this court — Yeah, but if we're going to — we have to construe them — if Boone remains the law, we have to make our construction of this other statute, unless you can give us some reason why not — And let me give you that reason. — consistent with that. Let me give you that reason, Your Honor. As the court pointed out — Now, you're on 3005 now or 3432? Let me actually talk about 3432, Judge Agee. The second argument. Yes. Let me talk about that because I think there is a distinction between those two statutes. Your Honor, Judge Motz, as you pointed out, Boone is more recent in time than Hall. Hall was a 3432 case. And so Boone creates a little bit of a disjuncture within this court's own jurisprudence because, again, it does not subject violations of the statute to harmless error review. It's structural error. It's reversible error. 3432, on the other hand, does not — this court's constructions of 3432 does not suggest automatic reversal. No, it's subject to harmless error review. But is there some other distinction that you're drawing because of the language of the two? It's not so much the language, Your Honor. In candor, I don't think there is a major distinction between whether or not someone is charged with a particular offense or whether or not they're indicted. In candor, I don't see a big difference between that. I thought you were making that argument. No, Your Honor. But what I do see is, within this court's own jurisprudence, a different approach to noticed error or unnoticed error. Well, but I think that if you just look at Boone, as Judge Anderson pointed out, we used a very textual approach, if you will. Yes. If you use the same textual approach to this other one, you don't get to the same place. Not quite, Your Honor, because if you apply the textual approach and you consider that textual approach within supporting case law, within other cases that have interpreted that very same language, and this is where I go back to Hall, the 1969 decision, which was squarely a 34-32 case, where this court said the procedural protections that ordinarily are associated with a capital defendant do not apply, where a defendant is not facing the death penalty. So I think there is a distinction between the way this court has approached the 3005 cases and the other procedural protection cases like 34-32. The government's position here is that this court, on plain error review, certainly should not reverse these convictions. The defendant never noticed his objections, and ultimately the standard is was there a miscarriage of justice here? I would say, with respect, Mr. Bartos did an extraordinary job at trial, effectively cross-examining the witnesses in this case, making a very compelling closing argument, at one point, actually keeping out a highly damaging piece of evidence against his client. So there was... You would agree that as a threshold matter on the 34-32 argument, there was an error here in the sense that he didn't get this particular witness identified the three days  I would not concede that, Your Honor, for a couple of reasons. Number one, first of all, as the court... Did he get... Three days before the commencement of trial, he didn't get the witness's name? That's correct. You have to concede that. That's the language in the statute. Well, I don't... With respect, Your Honor, I don't think I have to concede it, because the bottom part of the statute says that the judge can actually order if, by a preponderance of the evidence, there is any safety concern to any witness, then the witness list need not be produced at all under Section 30. Is there that finding, by a preponderance of the evidence? Judge Williams certainly made findings in this case that witness safety was an issue. There were multiple protective orders. That's a pretty specific finding that has to be... That's fair, Your Honor. But again, it's very difficult for the... That's fair. I don't think Judge Williams ever specifically invoked 3432, but I think the record certainly supports the notion that witness safety was an issue in this case, as the multiple protective orders attest, which were issued months in advance of trial. Well, if we were to determine that there was not a specific finding in this case, which in so many words there does not appear to be, unless you can show it to us, that there was a safety concern that justified not disclosing by the three-day limit, then there was an error, a textual error, if you want to call it, in this case, because the defendant did not get this particular witness in the time the statute required. Your Honor, again, I respectfully, I resist the idea that there is clear error here, and the reason I say that is because this court has never ruled that the capital protections are triggered under Section 3432, and that's why I do see... Why don't you, for purposes of answering the question, assume that you're not giving the names three days before trial was error? Then the question is, do you lose? We do not lose. And you don't lose because... Because there was no harm, there was no prejudice to the defendant. He received... You also claim it wasn't plain. And it wasn't plain. That's right, because there's no binding law in this circuit to suggest that... There is a binding federal statute. Well, there's a binding statute, Your Honor, but again, the statute only applies if the defendant is a capital defendant. And that's why I think you do need to distinguish between 3005 and 3432, as this court's own jurisprudence draws that distinction. The Boone line of cases and Robinson, of course, which I haven't talked about, but in many ways is probably the controlling precedent in this case, the Boone-Robinson line of cases presumes that a defendant who is charged with a death-eligible offense, even though he never faces the death penalty, is a capital defendant, right? 3432, to my understanding, has never been construed that way in this circuit. And if anything, Hall, the 1969 case, suggests exactly the opposite, that if a defendant is not facing the death penalty, he is not a capital defendant for the purposes of 3432. Your argument is based on Hall, not a distinction between charged and indictment. Correct. That's right, Your Honor. It's based on the case law in this circuit. Did you look at the district court's docket entries? Because the record here doesn't tell us how much time elapsed between the time that the defendant got the name of this witness. But the docket entries seem to say three days to me. Yes, Your Honor. Were you trial counsel or do you know? I was not trial counsel, Your Honor, though I am prepared to answer your question. So the list of witnesses was provided on the morning of trial, which is March 1st, 2010. And when was this witness called? March 4th. So at least three days. Three days. Yeah, it was three days. But I would even go further, Your Honor, and this is in the record, the government met with this defendant. Not the . . . Yes, Your Honor. Yes, Your Honor. So you're representing that the record reflects that three days before the witness was called, not three days before trial, but three days before the witness was called, his name was identified to the defendant. Absolutely. If you look at Supplemental Appendix page 8, that is the witness list in this case. And Mr. Paredes is listed on that list on page . . . Of course, indulgence just for a minute. Important to mark that page. Top of page 11, Your Honor. Supplemental Appendix page 11, Roddy E. Paredes, Jr., aka Watte, aka King Watte, if the Court is with me. Top of page 11 of the Supplemental Appendix. The very top of page 11. Sealed Appellant's Ex parte Appendix. There's an unsealed appendix, Your Honor, filed by the United States on August 17, 2012. And so if you look at the top of page 11 of the Supplemental Appendix . . . Yes. Thank you, Your Honor. So you'll see that Mr. Paredes is listed right there. And I should say, you know, that's the formal notice. The government had met with Mr. Shepperson in a proffer session before the superseding indictment was returned in October of 2010, at which point the prosecutor sat down with the defendant and his lawyer and said, essentially, here is the evidence we have against you. It did not identify Mr. Paredes at that time, but to the extent that Mr. Paredes was the only other eyewitness, apart from Mr. Montoya, who, of course, was the victim, it strains credulity for him to say that he had no idea that Mr. Paredes would have been the other person testifying against him, because Mr. Paredes ultimately was the only other eyewitness, apart from the defendant himself. And the trial here began on March 1? March 1, Your Honor. And March 4 is when Mr. Paredes was called. So . . . And how do we find that? Pardon me, Your Honor? How do we find where he was called? Well, he was . . . it's in the . . . it's in the docket, Your Honor. And . . . Yeah, that's where I found it. Okay. I thought maybe there was some other place in the appendix of . . . So Mr. Paredes, Your Honor, testifies under Docket Entry 560. So if the Court were to look at Docket Entry 560, that's the transcript from March 4, 2012. And on that day, he describes in detail the various activities that happened that day when he joined Mr. Sheperson and Mr. Sheperson . . . And his testimony begins on that day. Correct. Yes, Your Honor. I should say also that Mr. Paredes . . . excuse me, Mr. Bartos, the trial counsel, never objected to the extent of asking the Court to exclude this testimony, indeed, Judge Williams. And if you look at the Fulks case, F-U-L-K-S, decision issued by this Court, one of the inquiries in deciding whether or not there was an error is whether or not defense counsel asked for the testimony to be excluded, whether the district court provided him time to try to seek a continuance, delay the trial. That was not the case, actually. You know, I offered the defense counsel a three-day holiday from trial. Yes, Your Honor. That's right. That's right, Your Honor. If I let the witness tell you. There was a new witness, though, a brand-new witness that popped up in the middle of trial. It was also a capital case, though, right? It was a capital sentencing proceeding where the government complied with its three-day rule. And in the middle of the trial, there was newly discovered evidence. So it's a little different than this case. But in terms of the actual, um, uh, managing of the trial, Your Honor, uh, as, as, as Your Honor knows, um, it's very difficult to deal with these issues in the middle of a very complex, very difficult trial. The Court has to use its discretion as best it can, uh, to run its docket and make sure that there's fairness. Judge Williams, in our view, bent over backwards in this case. How long was this trial? Two weeks. About two and a half weeks, Your Honor. Government, uh, the judge, the district judge, bent over backwards to try to ensure that this defender received a fair trial. He said, I will call witnesses under the Court's authority, Mr. Shepperson, if you want to recall any of these witnesses based on the disclosure of Mr. Paredes later than what is normally required, uh, in light of the protective order in this case. So the district judge certainly went out of its way. I'm sorry. I thought he never made the objection. Well, when Mr. Bardos, on the first day of trial, objected to essentially the issues relating to the disclosures, Your Honor, he said, it's hard for me to try this case if I don't know who the witnesses are, so I want to mistrial, essentially was his position. The district court rejected that and said, look, if you have an issue with these disclosure issues. Nobody mentioned the statute. No. Nobody mentioned the statute. Uh, the point I'm trying to make, though, is that the district court, at least under Fulks, certainly was acting appropriately in offering to continue the trial, in offering the defense counsel the opportunity to recall any witness who he felt he didn't properly get to cross-examine because of the . . . The district court offered the opportunity, offered a continuance? That was my recollection, Your Honor. No, no, no. I think he just said he recalled them. I don't know that he offered a continuance. Perhaps I stand corrected. The district court certainly said, I am happy to recall under my authority any witness that the defense feels it was not properly prepared to cross-examine, which, again, going back to the abuse of discretion idea, this is a district judge who is managing a complex, difficult trial and, again, is doing his very utmost to make sure that this defendant received a fair trial. Uh, in light of the protective order in this case, in light of the discovery agreement that the defendant signed in this case, or at least his counsel, specifically stipulating that the government could withhold the identities of certain cooperating witnesses until a time it felt was appropriate to disclose. Um, I do see my time is running down, Your Honors, but for all of those reasons, we believe that there was no plain error under either Section 3005 or under Section 3432. And for those reasons, this court, um, should affirm the judgment of the district court below. Thank you. Thank you, Your Honor. Your Honors, let me clarify something that I think I was confused on at first, which is this whole idea of when the notice in the three days. The statute says at least three entire days before the commencement of trial. It does, to be sure. Right. So, you know, all of this about when there was a laundry list of potential witnesses on the first day of trial. Look. No. Counsel for the. Right. Within three days. Right. Right. Not three days before trial. Right. Exactly. And the other point there is, practically speaking, anyone who's been in a trial like this knows, as government counsel just mentioned, it is complex. You don't have time in the middle of trial to investigate and prepare your case. So a disclosure on the first day of trial, um, Congress chose that language for a reason. And the reason is, if the disclosure is going to have any benefit to the defendant, it has to occur prior to the commencement of trial, not during trial. So the fact that the witness may have been called three days after the laundry list was delivered to the defense counsel on the first day of trial is a red herring. Second, a very important admission or point was made just now, and that was that Judge Williams never engaged in the balancing test Congress required under that statute. To me, that in and of itself is sufficient at least to find that the exception within the statute, which would allow perhaps a deviation from the requirement of disclosure, was not complied with. So this court is unable to say that the statute doesn't apply because of that exception. The third point I want to make is that with respect to prejudice, the government says, well, there was no prejudice to the defendant because, you know, he got this witness identified on the first day of trial. There absolutely was prejudice for a number of reasons. Number one, his counsel didn't have any opportunity to investigate this witness prior to the actual trial. But more importantly, as I mentioned before, the medical examiner testified before Mr. Peredes testified, and the record is clear that the defense counsel asked no questions. The reason he asked no questions, in my mind, is because he was unaware at the time that what Peredes was about to say on the stand the next day was inconsistent with what the medical examiner was testifying about. Didn't the district court say at the outset of the trial, or at the outset of this, that before this ever happened, that he would let the defense recall any witnesses it wanted to? The trial court most certainly did, and that's commendable, but it doesn't fix the problem. The language of the statute requires the disclosure to be made before trial. When you're in the heat of trial, Your Honor, you just were human beings. He had the right to have his attorney prepare before trial. You can't expect trial counsel to be superhuman and say, wait, I'm going to, maybe I can recall this witness. Plus, there's all kinds of additional concerns when you start recalling witnesses like that in front of a jury. And I wasn't trial counsel, so I can't speak to what he was thinking. But I think that that offer doesn't fix the problem. Can I ask you one other thing about that offer? Was there an offer to give him three days? I don't recall that. No. I don't recall that being in the record, Your Honor. I only recall the judge saying, I'll recall witnesses on my authority if I need to. The last point I want to get back to goes back to 3005, and that is that, Judge Mott, you made a point earlier, and I agree with you, that the earlier decision is normally what the court follows. And I neglected to point out that Williams and Blankenship precede Boone by a number of years. Williams was decided in 1976. Boone didn't come around until 2001. And the language in Williams, in my mind, makes it very clear that under the circumstances just like in this case, you do have a request that meets the requirement of Section 3005. So if, in fact, the court is going to apply its earlier decision, or in this case decisions, plural, Williams and Blankenship, then it should find that a request was made in this case because that issue was not presented in Boone. Boone presented a different issue where the issue was the defendant had clearly made a request specific for two counsel, but the issue was whether or not the statute applied in light of the non-filing of a capital notice. So for those reasons, Your Honor, I believe Mr. Shepperson deserves a new trial. Thank you. MS. WARREN. Thank you very much. Mr. Sheppard, I understand you're court-appointed. MR. SHEPPARD.   WARREN. And I appreciate your efforts. You've done a fine job for your client. MR. SHEPPARD. I appreciate that very much.  WARREN. And I think a better job could have been done. MR. SHEPPARD. Thank you. MS. WARREN.
judges: Diana Gribbon Motz, G. Steven Agee, Joseph F. Anderson Jr.